# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROBERT D. SILMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-11-137-FHS-SPS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

The claimant Robert D. Silmon requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on April 15, 1970, and was thirty-nine years old at the time of the administrative hearing. He has a tenth grade education but earned his GED (Tr. 27). He has past relevant work as a forklift operator, mechanic, mold changer, painter, and pipe coiler (Tr. 21). The claimant alleges that he has been unable to work since July 12, 2007 because of a back injury and blindness in his right eye (Tr. 105).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on October 9, 2007. The Commissioner denied his application. ALJ Kim D. Parrish held an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 22, 2009. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work, *i. e.*, he could lift/carry 10 pounds frequently and occasionally, stand/walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday, but that claimant would require an option to alternate sitting and standing every 30 minutes (Tr. 19). In

addition, the ALJ found that the claimant could only occasionally stoop, kneel, and crouch (Tr. 19). While the ALJ concluded that the claimant was unable to return to his past relevant work, he found that there was other work the claimant could perform in the national economy, *i. e.*, production worker, inspector, and information clerk (Tr. 22). Thus, the ALJ concluded that the claimant was not disabled at step five (Tr. 22).

## Review

The claimant contends that the ALJ erred: (i) by failing to consider his vision loss at step five and (ii) by failing to properly consider the opinions of claimant's treating physician Dr. Richard Jones, M.D. The undersigned Magistrate Judge finds that the ALJ erred by failing to properly analyze the opinions of Dr. Jones.

The claimant began receiving treatment from Dr. Richard Jones, M.D. in May 2003. On May 21, 2003, Dr. Jones referred the claimant to Dr. Luis Mignucci, M.D., who wrote that claimant's CT myelogram revealed evidence of advanced degenerative disk disease at L5-S1 and L4-L5. Further, there was evidence of a left-sided disk herniation at L4-L5 with thecal compromise (Tr. 196). The recommendation at that time was that claimant would "require an anterior lumbar interbody fusion at the L4-L5 and L5-S1 levels followed by a lumbar decompression at L4-L5 and stabilization procedure from L4 to S1" to relieve the pain, and those procedures were in fact performed on June 24, 2003 (Tr. 196-99). On November 25, 2003, the claimant was cleared to return to work but was "asked to only lift or carry [no] more than ten pounds and do most of his work on the fork-lift in the sitting position" (Tr. 201). The claimant began receiving

epidural steroid injections in his spine to manage pain, and while he was noted to have returned to work during an appointment on May 11, 2005, he was also noted to be experiencing increased pain (Tr. 212). On August 16, 2006, Dr. Jones assessed that claimant was suffering from chronic pain syndrome secondary to failed spine surgery but noted that a rhizotomy administered by his pain management doctor had helped "quite a bit" (Tr. 269). The claimant continued to increase his activity at work, which resulted in more pain and increased dosages of medications (Tr. 267). Dr. Jones noted on December 12, 2006 that the claimant needed to adjust his expectations downward and those expectations should be reflected in his job limitations (Tr. 267). On April 3, 2007, Dr. Jones wrote that claimant's symptoms were exhibiting a "[m]ild worsening of his condition as evident by no good days and more bad days than previously reported" (Tr. 265). Dr. Jones noted that claimant was experiencing low back and shoulder pain on August 22, 2007 and had been fired from his job (Tr. 263). The claimant was noted to still be experiencing pain in his back and that he was still on disability (Tr. 262).

Dr. Jones wrote three letters on behalf of the claimant. Dr. Jones submitted the first letter on December 14, 2009 (Tr. 523). The letter states that there were "multiple reasons why [the claimant] cannot work" including blindness in one eye, problems with neck and back movement, and loss of range of motion (Tr. 523). Dr. Jones also wrote that in addition to spinal surgery, the claimant has also had multiple injections into his spine because of pain (Tr. 523). The second letter, dated May 27, 2010, stated that claimant has had failed spine surgery, permanent vision loss, and permanent anxiety (Tr.

525). Further, Dr. Jones wrote that claimant likely needed assistance at home and that he "cannot see [the claimant] working any time in the future" (Tr. 525). The final letter was dated October 19, 2010 and reflects Dr. Jones's opinion that claimant "has significant medical problems that affect his ability to work" and that, in fact, the claimant was unable to work (Tr. 527).

In addition to the letters, Dr. Jones also completed a form entitled "Medical Assessment of Ability to Do Work Related Activities" on June 24, 2009 (Tr. 470). In that assessment, Dr. Jones opined that claimant was capable of sitting upright for two hours in an eight-hour workday, standing for one hour in an eight-hour workday, and walking for one hour in an eight-hour workday (Tr. 470). In addition, Dr. Jones wrote that claimant could never lift less than ten pounds, could only perform simple grasping with his left hand, could not use his arms for pushing and pulling, and could not perform fine manipulation (Tr. 470). Dr. Jones opined that claimant could not use his left foot to operate leg controls and needed to elevate his legs for three-four hours per day (Tr. 470). Finally, Dr. Jones noted that claimant "is on [a] large amount of pain pills to help [decrease] pain" and "just to get by" (Tr. 470).

At the outset, it should be noted that an ALJ should explain how a severe impairment at step two later becomes insignificant in the five step process. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]. At step two, the ALJ found that claimant's vision loss in the right

eye constituted a severe impairment that significantly limited his ability to do basic work activities. However, in his step four analysis, the ALJ's only mention of this impairment was to say that there were no reports of any problems with his right eye blindness in claimant's treating physician's medical notes, he had 20/30 vision in his left eye, and "there was no evidence of further treatment for vision problems" (Tr. 21). Thus, the ALJ included no limitations in the claimant's RFC based on his right eye blindness. The ALJ then relied on answers given by the vocational expert based on hypothetical questions, none of which included any mention of right eye blindness, to conclude that claimant was capable of performing work in the national economy (Tr. 22, 38-39).

Medical opinions from the claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the

treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

The ALJ summarized Dr. Jones findings in his opinion, but ultimately held that his opinions were "not supported by the doctor's treatment notes, clinical findings, or testing" (Tr. 21). The ALJ's evaluation of Dr. Jones's opinions was deficient for several reasons.

First, with respect to the "Medical Assessment of Ability to Do Work Related Activities," there is no indication that the ALJ evaluated Dr. Jones's opinion with reference to the factors set out in 20 C.F.R § 404.1527. *See Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using *all* of the factors provided in [§] 404.1527.'") [emphasis added], *quoting Watkins*, 350 F.3d at

1300. *See also Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must . . . consider a series of specific factors in determining what weight to give any medical opinion.") [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995). *But see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. Ms. Oldham cites not law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion.").

Second, while the ALJ apparently rejected Dr. Jones's medical assessment, he failed to specify what weight he *was* assigning to Dr. Jones's opinion. *Ramirez v. Astrue*, 255 Fed. Appx. 327, 332 (10th Cir. 2007) ("'[T]he RFC assessment must always consider and address medical source opinions. *If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted*.'") [unpublished opinion], *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at * 7 [emphasis added]; *Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion.") [internal citation omitted] [emphasis added],

*citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995).

With respect to the letters submitted by Dr. Jones, the ALJ correctly found that they expressed opinions on issues expressly left to the Commissioner and that he was, therefore, not bound by said opinions (Tr. 21). However, the ALJ failed to weigh the opinion in accordance with the factors set out in 20 C.F.R. § 404.1527. *See* Soc. Sec. R. 96-5p, 1996 WL 374183, *3 ("In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 C.F.R. § 404.1527(d)[.]"). In addition, the ALJ discounted the opinions expressing claimant's inability to work because "it is possible that the doctor was referring solely to an inability to perform the claimant's past work, which would be consistent with the conclusions reached in this decision" (Tr. 21). This is not a legally sound basis for rejecting *any* opinion, including opinions from treating physicians on issues within the province of the ALJ, as it is clearly speculative. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*") [quotation omitted] [emphasis in original].

Because the ALJ failed to properly analyze the opinions of claimant's treating physician, Dr. Jones, the undersigned Magistrate Judge concludes that the decision of the

Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of the medical evidence of record. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

**Conclusion**

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 11th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma